IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| STATE FARM FIRE & CASUALTY <br> COMPANY a/s/o Eugene Ellison <br><br> v. <br><br> POTOMAC ELECTRIC POWER <br> COMPANY, et. al. | * <br> * <br> * <br> * <br> *   Civil No.  JKS 09-3459 <br> * <br> * <br> * |

## MEMORANDUM OPINION

Plaintiff State Farm Fire & Casualty Company (State Farm), as subrogee of Eugene Ellison, originally filed this case in the Circuit Court for Prince George's County, Maryland, against Defendants Potomac Electric Power Company (PEPCO) and Asplundh Tree Expert Co. (Asplundh).  ECF No. 2. Defendant Potomac Electric Power Company (PEPCO) removed it to the United States District Court for the District of Maryland, ECF No. 1, and pursuant to consent of the parties, it was referred to me for all further proceedings.  ECF No. 23.  Presently pending are Defendants PEPCO and Asplundh's motions to dismiss as sanction for spoliation.  ECF Nos. 31 and 33.  No hearing is deemed necessary. *See* Local Rule 105.6.  For the reasons set forth below, Defendants PEPCO and Asplundh's motions are granted.

**I.     Background.**

This diversity action arises from a September 28, 2006, fire that occurred at the residence of Eugene Ellison at 5466 Addison Road, Capitol Heights, Maryland.  Mr. Ellison had a homeowner's insurance policy issued by State Farm.  After paying the homeowner's claim, State Farm filed this subrogation claim asserting that the fire began as a result of a high voltage surge entering the Ellison residence from electrical lines owned by PEPCO.  EFC No. 2 ¶ 9.  State Farm alleged that the surge resulted from PEPCO's negligence in repairing the transformer supplying power to 5466 Addison Road

and/or Asplundh's negligence in failing to properly maintain the trees surrounding the electrical lines. *Id.* at ¶¶ 10-12.

On September 30, 2006, State Farm sent fire cause and origin expert Ward Caddington to inspect the Ellison residence. Based on a "complete exterior and interior survey of the home and its contents," Mr. Ward concluded that the fire originated at PEPCO's incoming electric service. ECF No. 31, Ex. 3 at 1-2. Mr. Caddington recommended an inspection by electrical engineer Joseph Hauf to further determine the cause of the fire. *Id.*, Ex 2 at 1. On October 3, 2006, Mr. Hauf, on behalf of State Farm, spoke with the Ellison family and inspected the residence. *Id.*

Mr. Hauf's report stated that the location of a hole in the home's breaker panel internal cover, which he also inspected and photographed, gave "a strong indication that a massive high voltage surge entered the panel box on the neutral conductor and arched over to the panel cover, burning the hole through the metal." *Id.*, Ex. 2 at 2. Mr. Hauf concluded, based on the position of the hole above the neutral wiring on the electrical panel, the nearby PEPCO utility work, and the burned brush on the utility right-of-way, that the surge entered the home through its service conductors. *Id.,* Ex. 2 at 2-3. During his deposition, however, Mr. Hauf stated that his opinion that the surge came in the neutral conductor may have been wrong because it did not appear from the photographs that the hole in the casing was located directly over the neutral wiring. ECF. No. 34, Ex. 1 at 125-28. He acknowledged that it would not be possible to verify whether the neutral wiring caused the damage without examining the box and cover. *Id.* He testified that State Farm adjuster Brown was "really mad" when he learned that the cover was missing, and that "we all knew it was important." *Id*. at 69-70.

On October 18, 2006, Olivia Grimes, a PEPCO senior claims agent, and Robert Neary, an electrical engineer on behalf of PEPCO, visited the Ellison property. ECF No. 31, Ex. 1 ¶ 4. Mr. Neary was able to inspect the breaker panel box, but the front cover, the wall insulation, and all the fire debris

2

had been removed. *Id.*, Ex. 1 ¶ 5. Mr. Neary states that Mr. Hauf was present and agreed to remove and secure the panel box for further examination in a laboratory. *Id.*, Ex. 1 ¶ 6. Mr. Hauf admitted knowing that this evidence was important. ECF No. 34, Ex. 1 at 73-75. However, when Mr. Neary later requested to view the panel box in the laboratory, Mr. Hauf informed him he did not have it in his possession. ECF No. 31, Ex. 1 ¶ 8.

Both Mr. Neary and Asplundh's expert assert that the panel box and cover are necessary to determine the cause of the fire. PEPCO and Asplundh ask this court to dismiss this case due to State Farm's spoliation of evidence.

## II. Discussion.

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). A trial court can impose sanctions to redress the conduct of a party who commits spoliation. *Id.* The court should mold these sanctions "to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Id. (quoting West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). The court has significant discretion to consider a wide range of sanctions "both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct." *Silvestri*, 271 F.3d at 590 (*quoting Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)).

Dismissal, however, is a particularly severe sanction which must not be imposed lightly. The *Silvestri* Court stated that dismissal is warranted if either the spoliator's conduct was sufficiently egregious to amount to a forfeiture of the claim, or "the prejudice to the defendant is extraordinary, denying it the ability to adequately defend its case." 271 F.3d at 593; *Erie Ins. Exch. v. Davenport Insulation, Inc.*, 659 F. Supp. 2d 701, 707 (D. Md. 2009). The first prong requires the court to find some

3

degree of fault on behalf of the spoliator. *Erie,* 659 F. Supp. 2d at 703. Under the second prong, a defendant is prejudiced if as a result of the plaintiff's actions the defendant is forced to rely on the observations and conclusions of the plaintiff's experts. *Id.*

State Farm contends that dismissal as sanction for spoliation is not appropriate here. State Farm argues that there is no severe prejudice because PEPCO physically inspected the loss site and the panel box, and has photographs of the cover. State Farm suggests that it should be permitted to depose Mr. Neary to explore his contention that examination of the cover, and laboratory examination of the box, are necessary to adequately defend the case, and claims that "all parties have been able to put forth cogent substantive arguments challenging State Farm's expert's opinion." ECF No. 35 at 3. State Farm also claims that Defendants have failed to prove a level of fault or bad faith by State Farm that warrants dismissal, ECF No. 32 at 4-5, and questions whether Defendants have shown that State Farm was responsible for the loss of the evidence.

State Farm's responsibility for the loss of the evidence is established. Mr. Neary attests that State Farm's expert Mr. Hauf was present during Mr. Neary's October 18, 2006, inspection and that Mr. Hauf agreed to secure the panel box for laboratory examination and took possession of it. ECF No. 31, at Ex. 1 ¶ 6. Mr. Hauf testified that State Farm adjuster Mr. Brown was present during his October 3, 2006, inspection; while Mr. Hauf could not recall whether he and Mr. Brown discussed the need to preserve the cover and the box, he confirmed that they knew the evidence was important and knew that PEPCO would be sending their own expert to the scene. ECF No. 34, Ex. 1 at 68-70. State Farm's other expert, Mr. Caddington, who retained Mr. Hauf as an engineering expert, testified that it is the engineering expert's responsibility to secure the evidence and that it is Mr. Caddington's normal practice to advise the adjuster of the need to secure the evidence. ECF No. 34, Ex. 2 at 11-12. Because State Farm does not rebut any of this evidence, the court finds that State Farm knew that it had a duty to

preserve this evidence for possible litigation and failed to do so, and is thus responsible for the spoliation.

As previously noted, Defendants do not need to show both a culpable state of mind and prejudice. *Silvestri*, 271 F.3d at 593. Instead, to justify the harsh sanction of dismissal, this court must conclude either that the spoliator's conduct was so egregious as to amount to a forfeiture of the claim, or that the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendants the ability to defend the claim.

The inquiry into whether State Farm's spoliation substantially denied PEPCO's and Asplundh's ability to defend themselves requires the court to determine whether PEPCO and Asplundh have sufficient evidence to test State Farm's theory and develop alternative theories for the cause of the fire. *Erie*, 659 F. Supp. 2d at 707. It is clear that they do not; indeed, absent the physical evidence, even State Farm cannot support its theories. Mr. Neary's affidavit states that a laboratory examination of the panel box and cover is an important step, and would likely be valuable, in disproving Mr. Hauf's causation opinion and forming an alternative scenario. Mr. Neary also explains why the photographs are insufficient for that purpose. ECF No. 31, Ex. 1 ¶¶ 8-11. Asplundh's expert Mr. Coste reported that there is insufficient evidence to support Mr. Hauf's causation opinion and that no conclusion as to the cause of the fire can be reached without an examination of the panel box, cover, and door. ECF No. 35, Ex. 1 at 4. State Farm's expert Mr. Hauf originally contended, based on his belief that the hole in the panel cover aligned with the neutral lug on the panel box, that the fire was caused by a surge entering the panel box from the neutral wire. However, he admitted in deposition that his original location of the hole is not confirmed by the photographs. ECF No. 34, Ex. 1 at 125-28. Mr. Hauf also opines, due to the appearance of oxidization on the lugs in the photographs, that damage to "hot legs," lugs located

next to the neutral wire, caused the fire. *Id.* at 37-39. However, he never tested the lugs to see whether they oxidized and he admitted that this conclusion cannot be checked without the panel box. *Id.* at 39.

It is thus clear that Defendants are unable to test Mr. Hauf's causation opinion, which itself is untested, or form alternative opinions. *See Erie*, 659 F. Supp. 2d at 708 (*citing Silvestri*, 271 F.3d at 594). In light of Mr. Hauf's admission that his opinion cannot be tested, there is no need to depose Mr. Neary. And given these circumstances, there is no available sanction short of dismissal. Under similar facts, the *Silvestri* Court considered formulating an order creating facts as established adverse to the spoliator or simply precluding the spoliator's experts from testifying. 271 F.3d at 594-95. Here, as in *Silvestri*, neither alternative is feasible. There is no basis upon which to determine what facts are established, and striking the testimony of State Farm's experts would essentially amount to dismissal because State Farm cannot prove its case without experts.[1]

**III. Conclusion.**

Defendants PEPCO and Asplundh were irreparably prejudiced by State Farm's failure to preserve evidence critical to a determination of the cause of this fire. Accordingly, their motions to dismiss are granted, and the Clerk will be directed to close this case.

Date:   October 15, 2010                                              /S/
                                                                JILLYN K. SCHULZE
                                                                United States Magistrate Judge

---

[1] Alternatively, the court would conclude that State Farm's conduct was sufficiently egregious to justify dismissal. In *Silvestri*, although the Court reasoned that the plaintiff's attorney knew that the vehicle was the central piece of evidence in his case, and as a result should have preserved the evidence or at least notified defendant of the claim, it did not determine that the conduct rose above the level of mere negligence. 271 F.3d at 594. Here, unlike the plaintiff in *Silvestri,* State Farm is a sophisticated insurer, with experience in subrogation claims, whose agents fully understood the critical nature of the panel box and cover and the need, as well as their obligation, to preserve this evidence. *See, e.g., Erie,* 659 F. Supp 2d at 708. State Farm thus acted with knowledge and not mere negligence, making its failure to preserve evidence that it knew was crucial sufficient to justify dismissal.